CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

2016 MAY 27   AM 10: 22

|                                                        |     |                      |
| ------------------------------------------------------ | --- | -------------------- |
| **WILLIAM JOSEPH BOLES,**                              | §   | DEPUTY CLERK         |
|                                                        | §   |                      |
| **Plaintiff,**                                         | §   |                      |
|                                                        | §   |                      |
| **v.**                                                 | §   | **No. 1:15-CV-0049-BL** |
|                                                        | §   |                      |
| **CAROLYN W. COLVIN,**                                 | §   |                      |
| **Acting Commissioner of Social Security,**            | §   |                      |
|                                                        | §   |                      |
| **Defendant.**                                         | §   |                      |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405 (g), Plaintiff seeks judicial review of a decision of the Commissioner for Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* Compl. (doc. 1). The Commissioner has filed an answer, Def.'s Answer (doc. 6), and a certified copy of the transcript of the administrative proceedings, SSA Admin. R. [hereinafter "Tr."] (doc. 8). The parties have briefed the issues. *See* Docs. 13, 15, 16. The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636 and the parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be reversed and remanded for further consideration.

## I. BACKGROUND

Plaintiff claims that he is disabled due to diabetes and ulcerative colitis.[1] Tr. 146. He protectively filed an application for DIB on March 15, 2013, alleging disability beginning December

---

[1]Plaintiff initially claimed disability based on depression and anxiety also, *see* Tr. 146, but the Administrative Law Judge found them medically non-determinable because the record contains no diagnoses for such impairments, Tr. 26. Plaintiff has raised no issue regarding such impairments.

14, 2012. Tr. 133. His date of last insured is December 31, 2016. Tr. 26. Therefore, the relevant time period for this application and the Court's review commenced December 14, 2012, and has not yet expired. *See* Tr. 35. The Commissioner denied the application initially on May 6, 2013, Tr. 66-72, and on reconsideration on August 15, 2013, Tr. 73-80. At Plaintiff's request, *see* Tr. 93, he received a hearing before Administrative Law Judge ("ALJ") William Helsper on June 25, 2014, *see* Tr. 41-65. On September 15, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that existed in significant numbers in the national economy. Tr. 35.

Applying the sequential, five-step analysis set out in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 26. Next, the ALJ determined that Plaintiff suffered from the following severe impairments: ulcerative colitis, diabetes mellitus, and arthralgia in multiple areas. *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[2] Tr. 26-28. The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).[4] Tr. 28-33. And based upon the RFC determination

---

[2] The relevant regulations explain the purpose and use of the listings of impairments. *See* 20 C.F.R. § 404.1525.

[3] A claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. *Id.* § 404.1546(c). But that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3).

[4] The regulation addresses physical exertion requirements and explains: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). To determine whether an individual has the ability to perform the full range of sedentary work from an exertional standpoint, Program Policy Statement (PPS) 101 elaborates:

2

and testimony from a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to his past relevant work, but was capable of performing other jobs that exist in significant numbers in the national economy. Tr. 33-35. At Step 5 of the evaluative sequence, the ALJ applied Medical-Vocational Rules (also known as the "Grids") 201.28 and 201.29 to find that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Tr. 35.

The Appeals Council received and considered additional evidence – a three-page brief and nineteen pages of pharmacy records – when it denied review on January 9, 2015. Tr. 1-5. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on March 10, 2015. *See* Compl. He presents two issues for review: (1) whether the ALJ properly weighed the medical evidence and properly determined his RFC and (2) whether the ALJ properly evaluated his credibility. *See* Doc. 13 at 2.

## II. MEDICAL RECORD

Before setting out the legal standards and analyzing the issues raised in this appeal, the Court summarizes the medical evidence and opinions. Plaintiff contends that the ALJ failed to properly weigh and consider medical opinions of his treating surgeon, William F. Simpson, Jr., D.O., and his treating physician, Robert C. DeLuca, D.O. *See* Doc. 13 at 10. The ALJ specifically recognized Dr. Simpson as a treating physician. Tr. 31. But the ALJ does not classify or identify Dr. DeLuca as

---

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.
Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83–10 (PPS–101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

either a treating or non-treating source – the ALJ decision leaves the treatment relationship unspecified. *See* Tr. 32-33.

## A. Dr. Simpson

Prior to the alleged onset of Plaintiff's disability, Dr. Simpson had treated his ulcerative colitis since 2005. *See, e.g.*, Tr. 201-02 (showing colonoscopy performed May 2010, ten months following prior appointment), 204 (April 20, 2010 Disclosure and Consent for colonoscopy), 212 (showing lab results as of April 20, 2010), 218 (showing abdominal pain as of August 14, 2012), 276 (noting date of first treatment as October 10, 2005). Following a May 17, 2010 colonoscopy, Dr. Simpson recorded: "Active disease noted throughout." Tr. 208.

Dr. Simpson physically examined Plaintiff on December 18, 2012. Tr. 340. Plaintiff had lost fifty-five pounds since his last visit and looked "extremely ill." *Id.* The doctor sent him to the hospital for immediate lab work and possible admission. *Id.* On follow-up, Dr. Simpson examined Plaintiff on January 18, 2013. Tr. 339. At that time, Plaintiff's chief complaints were diarrhea and rectal bleeding. *Id.* He had significant problems with diabetes and loose stools. *Id.* Medications were not keeping the conditions under control.[5] *Id.* Dr. Simpson prescribed a new medication for diarrhea, scheduled a follow-up for four to six weeks later, and discussed other options with Plaintiff. *Id.* But Plaintiff was not interested in other options "at this time due to financial status." *Id.*

Plaintiff did not appear for his next follow-up appointment. Tr. 275. And in an undated letter following that failure to appear, Dr. Simpson opined that Plaintiff's "weakness and inability to control diarrhea" caused by his ulcerative colitis precludes full time employment and that such

---

[5]When considering Plaintiff's RFC, the ALJ mistakenly noted that the medications were "controlling his symptoms very well." Tr. 29. The Commissioner reiterates the mistake in her briefing. *See* Doc. 15 at 15.

condition would last more than twelve months. *Id.* On April 9, 2013, Dr. Simpson completed a Gastrointestinal Disorders Impairment Questionnaire. Tr. 276-81. He therein (1) recorded diagnoses of inflammatory bowel disease and ulcerative colitis; (2) noted a poor long-term prognosis; (3) identified several positive clinical findings, including chronic and bloody diarrhea, loss of appetite, malaise, abdominal pain and cramps, fatigue, nausea, pain, weight loss, and vomiting; (4) listed primary symptoms as "pain, weight loss, fatigue, bloody stool;" (5) noted evidence of malabsorption and multiple recurrent inflammatory lesions; (6) found that Plaintiff suffered from severe, chronic pain in all joints caused by diet and stress; and (7) found that Plaintiff's symptoms constantly interfered with attention and concentration and that Plaintiff could not tolerate even low stress at work. Tr. 276-79.

Based on Plaintiff's impairments, Dr. Simpson opined that Plaintiff could sit for four to five hours and stand or walk for one hour in an eight-hour work day. Tr. 279. The doctor further opined that, although Plaintiff's condition did not make it necessary or medically recommended that he not sit continuously in a work setting, Plaintiff would need to get up and move around one to two hours "due to bowel habits." Tr. 279-80. In Dr. Simpson's medical opinion, Plaintiff could occasionally lift and carry five to ten pounds, would be prone to frequent infections, and would need "ready access to a restroom" every one to two hours without advance notice causing him to be away from his work station for two-plus hours daily. Tr. 280-81. Dr. Simpson concluded the questionnaire with an assessment that Plaintiff's condition makes him unemployable. Tr. 281.

## B. Dr. DeLuca

After Dr. Simpson referred Plaintiff for medical management, Tr. 275, Dr. DeLuca first examined Plaintiff on December 19, 2012, Tr. 303, 354. Plaintiff presented numerous positive

symptoms, including recent weight loss, diarrhea, abdominal and joint pain, and hematochezia. *Id.*
Dr. DeLuca recommended hospitalization but Plaintiff wanted to go home because he could not
afford the hospital. Tr. 305, 356. On January 30, 2013, Dr. DeLuca stated: "I feel that during this
time, Mr. Boles is unable to adequately hold down a job. His blood sugars fluctuate daily which
make him sick along with the abdominal pain that he endures." Tr. 316.

     Plaintiff visited Dr. DeLuca for paperwork on March 4, 2013. Tr. 299, 350. Plaintiff had
positive symptoms of "feeling poorly (malaise);" various abdominal pain; nausea; heartburn; and
diarrhea. *Id.* Dr. DeLuca noted: "patient is unable to work due to weakness, fluctuating blood sugars
and abdominal pain and diarrhea." Tr. 300, 351.

     On April 30, 2013, Plaintiff again visited Dr. DeLuca for medical consult and disability
paperwork. Tr. 295, 335, 346. At that time, Plaintiff had positive symptoms of recent weight loss,
malaise, neck stiffness and pain, abdominal and joint pain, nausea, and diarrhea. *Id.* Dr. DeLuca
noted that the ulcerative colitis made it "very unlikely" that Plaintiff would "be able to hold down
any gainful employment." Tr. 297, 337, 348. The doctor further noted that Plaintiff would need to
"be up every hour or so to avoid pain in joints" and that Plaintiff would need to use "the bathroom
frequently." *Id.*

     On May 1, 2013, Dr. DeLuca completed a Multiple Impairment Questionnaire. Tr. 317-24.
To the extent it is legible, he therein (1) recorded diagnoses of ulcerative colitis, diet controlled
diabetes, and two other conditions; (2) noted a fair prognosis; (3) identified several positive clinical
findings, including abdominal pain, weight loss, and diarrhea; (4) listed primary symptoms as weight
loss and fatigue; (5) found that Plaintiff suffered from moderately severe abdominal pain caused by
standing, walking, and riding; and (6) found that Plaintiff's symptoms constantly interfered with

attention and concentration and that Plaintiff could not tolerate even low stress at work. Tr. 317-22.

Based on Plaintiff's impairments, Dr. DeLuca opined that Plaintiff could sit for two hours and stand or walk for no more than one hour in an eight-hour work day. Tr. 319. The doctor further opined that Plaintiff's condition made it necessary or medically recommended that he not sit, stand, or walk continuously in a work setting and that he would need to get up and move around one to two hours for ten minutes before he could sit again. Tr. 319-20. In Dr. DeLuca's medical opinion, Plaintiff (1) could occasionally lift and carry five to ten pounds but was precluded from lifting or carrying heavier weights; (2) had significant limitations in his abilities to reach and to grasp, turn, and twist objects; (3) had minimal limitations in his ability to use his fingers and hands for fine manipulations; (4) would not be prone to infections; (5) would need "ready access to a restroom" and would need to take unscheduled breaks four to eight times daily for fifteen to twenty minutes; (6) would have good and bad days due to his impairments; (7) would need to avoid temperature extremes; and (8) could not push, pull, kneel, bend, or stoop. Tr. 320-23. Plaintiff's condition also interfered with his ability to keep his neck in a constant position such as looking at a computer screen or looking down at the desk. Tr. 321. Dr. DeLuca opined that Plaintiff was unable to do a full time competitive job that required him to keep his neck in a constant position on a sustained basis. Tr. 322. Dr. DeLuca explained that Plaintiff's ulcerative colitis would worsen under stress. *Id.*

## C. Other Medical Evidence

Other than the records of Drs. Simpson and DeLuca, the administrative record contains no medical records from any treating or evaluating physician. But it does contain pharmacy prescription records, Tr. 366-81, and opinions of State agency medical consultants who found no severe impairments, Tr. 66-72 (initial consideration), 73-80 (reconsideration).

### III.  LEGAL STANDARD

In general,[6] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)).  To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently work-ing; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).  If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448.  The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  For Steps 1 through 4, the claimant has to burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448.  If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d

---

[6]The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older.  *See* 42 U.S.C. § 423(d)(1)(B).  This provision is inapplicable on the current facts.

8

448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, No. 15-30449, 2016 WL 1551685, at *3 (5th Cir. Apr. 11, 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner and not the court resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

## IV.  ANALYSIS

Plaintiff raises two issues on appeal: (1) whether the ALJ properly weighed the medical evidence and properly determined Plaintiff's RFC and (2) whether the ALJ properly evaluated Plaintiff's credibility. *See* Doc. 13 at 2.

### A.  Treating Relationship

No one disputes that Dr. Simpson is a treating physician. The Commissioner, however, suggests that Dr. DeLuca may be properly classified as a non-treating medical source. *See* Doc. 15 at 7. But that suggestion is based in part on the ALJ commenting that Plaintiff was merely filling out or discussing disability paper work and thus generating evidence for his social security claim.

*See id.* Although two records of Dr. DeLuca indeed mention discussing or completing disability paperwork, those records clearly reflect that the reasons for the visits were for medical treatment and evaluation of Plaintiff's abdominal pain, other pain, and related diabetes. *See* Tr. at 295, 299. Thus, even though the ALJ did state that "it appears that the claimant sought treatment from Dr. Deluca in connection to generate evidence for the current appeal and not necessarily to treat his impairments," Tr. 33, such statement appears to overstate the references related to disability paperwork in contrast to the remainder of those medical records.

As the regulation explains to claimants, the Commissioner "will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability." 20 C.F.R. § 404.1502. But the medical record in this case does not reflect that Plaintiff visited Dr. DeLuca solely to obtain support for a disability claim.

Whether Dr. DeLuca is a treating or nontreating source as defined by § 404.1502 ultimately depends on whether the doctor had "an ongoing treatment relationship" with Plaintiff. The Court should consider Dr. DeLuca to be a treating source for a number of reasons. Most importantly, Dr. DeLuca was Plaintiff's own physician who provided medical treatment and evaluation on three occasions over a five-month period. A treating relationship for that period of time appears sufficient to be considered a treating source. *See Knox v. Astrue*, 660 F. Supp. 2d 790, 811 (S.D. Tex. 2009) (discussing treating sources). Further, the regulation that governs evaluation of opinion evidence, 20 C.F.R. § 404.1527, specifically takes into consideration the treatment relationship between physician and claimant and breaks it into two components: (i) duration of treatment relationship and frequency of examination and (ii) the nature and extent of the treatment relationship. And in this

case, the ALJ did not state that he considered Dr. DeLuca as a non-treating source even though he did comment that two visits appeared to be to build evidence for a disability claim.  When a physician appears to be a treating source and the ALJ does not specifically state that the source is considered as a non-treating source, the better practice is to consider the physician as a treating source as set out in § 404.1527 as addressed in *Newton* and discussed more fully in next section.  Moreover, despite the suggestion that Dr. DeLuca may be considered as a non-treating source, the Commissioner never directly argues that Dr. DeLuca is a non-treating physician.  In fact, the majority of the briefing asserts that the ALJ properly considered his opinions under *Newton* and the regulation governing treating physicians.  *See* Doc. 15 at 6-11.

## B. Weight Given to Medical Evidence and RFC Determination

Plaintiff contends that the ALJ failed to give controlling weight to medical opinions[7] of his treating physicians, Drs. Simpson and DeLuca.  *See* Doc. 13 at 10.  And if the Court finds those medical opinions not entitled to controlling weight, Plaintiff argues alternatively that the ALJ failed to give full consideration to the factors set out in 20 C.F.R. § 404.1527(c).  *Id.*  He argues that rather than giving any weight to the opinions of his treating physicians, the ALJ made an RFC assessment without evidence regarding the effects of his impairments on his ability to work.  *Id.* at 11-12.

When considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions.  *See* 20 C.F.R. § 404.1527(b).  Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physi-

---

[7]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). This regulation, however, reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* § 404.1527(d).

cians who perform a single examination of the claimant), or non-examining sources (a physician who reviews only the claimant's medical record). *See generally* 20 C.F.R. § 404.1502. The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless, even opinions from a treating source are "far from conclusive," because ALJs have "the sole responsibility for determining the claimant's disability status." *Id.*; *accord Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

"After identifying relevant medical opinions of treating physicians, ALJs must determine whether any such opinion is entitled to controlling weight." *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (citing appropriate regulations). And the regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. § 404.1527(c)(1)-(6).[8] "When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *3 (N.D. Tex. June 30, 2014) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)); *accord* 20 C.F.R. § 404.1527(c)(2). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ

---

[8]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453.

In addition, under 20 C.F.R. § 404.1520b(c)(1), "the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant is disabled." *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at \*7 (N.D. Tex. Sept. 17, 2015); *accord Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at \*7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recognized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement of § 404.1512(e) applied in *Newton*).[9] And "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," § 404.1520b(c) provides "various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence." *Bentley*, 2015 WL 5836029, at \*8.

ALJs who find a treating source opinion not entitled to controlling weight must consider the six factors of § 404.1527(c) to properly assess the weight to give such opinions. *Newton*, 209 F.3d at 456. But "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The [ALJ] need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at \*3 (N.D. Tex. April 23, 2010) (emphasis added); *accord Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at \*5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-

---

[9]This regulation was in effect when the ALJ issued his decision on September 15, 2014. Prior to the effective date of § 404.1520b, the ALJ would have been obliged under the mandatory provision of § 404.1512(e) to "seek clarification or additional evidence from the treating physician" if the ALJ determined "that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant." *See Newton*, 209 F.3d at 453.

899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008) (accepting recommendation of Mag. J.). And *Newton* does not require the detailed analysis when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." 209 F.3d at 458. Likewise, the detailed analysis under *Newton* is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who "have specific medical bases for a contrary opinion." *Id.*

The elimination of the detailed-analysis requirement in some circumstances prompted a later Fifth Circuit panel to state that "*Newton* does not apply" in those situations and that *Newton* "limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *See Qualls v. Astrue*, 339 F. App'x 461, 466 & n.2 (5th Cir. 2009) (per curiam). While noting that limitation, *Qualls* did not change the law as set out in *Newton*. Consequently, when the record contains competing first-hand medical evidence, the ALJ is not required to analyze the criteria set forth in § 404.1527(c) before declining to give great weight to a treating physician's opinion. *Newton*, 209 F.3d at 458; *Lopez v. Astrue*, 854 F. Supp. 2d 415, 423 (N.D. Tex. 2012); *Nicaragua v. Colvin*, No. 3:12-CV-2109-G-BN, 2013 WL 4647698, at *4 (N.D. Tex. Aug. 29, 2013). Similarly, the detailed analysis is unnecessary when the ALJ has weighed the treating physician's opinions against other treating or examining physicians in the circumstances set out in *Newton*.

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). ALJs have considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. And for good cause shown, an ALJ may assign little or no weight to an opinion

14

from a treating source. *Id.* "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

No one disputes that the opinions of Drs. Simpson and DeLuca are medical opinions. But to be clear, opinions that (1) conclude that Plaintiff is disabled or unable to work due to his impairments or (2) assess a claimant's RFC "are not medical opinions" under the regulations. *See* 20 C.F.R. § 404.1527(d). Such opinions are specifically excepted from the definition of "medical opinions" because the opinions address "issues reserved to the Commissioner." *Id.* And "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or even special significance." *Dobbins v. Colvin*, No. 6:14-CV-055-BL, 2016 WL 1179020, at \*3 (N.D. Tex. Feb. 25, 2016) (recommendation of Mag. J.), *adopted by* 2016 WL 1248911 (N.D. Tex. Mar. 25, 2016). ALJs do not err when they fail to credit legal conclusions on issues reserved to the Commissioner. *Tucker v. Astrue*, 337 F. App'x 392, 396-97 (5th Cir. 2009) (per curiam).

Despite the presence of non-medical opinions by the treating physicians, the record clearly reflects that the ALJ rejected more than an ultimate opinion on disability or RFC assessment by Drs. Simpson and DeLuca. Not only did the ALJ reject non-medical opinions on issues reserved to the Commissioner, but he rejected medical opinions of the two treating physicians. The ALJ accorded the opinions of Dr. Simpson "little weight" because they were (1) based on two examinations subsequent to the date of disability onset, (2) rendered more than a year prior to the ALJ hearing, and (3) inconsistent with a lack of treatment sought by Plaintiff and his activities of daily living and RFC. Tr. 32. The ALJ gave "little weight" to the opinions of Dr. DeLuca because they were (1) based on

three examinations, two of which were conducted to fill out and discuss disability paperwork and (2) inconsistent with (a) the doctor's treatment of Plaintiff in that he prescribed no diabetic treatment and "never detected, discovered, or treated any abnormalities regarding the claimant's neck;" (b) "a CT scan of the claimant's neck conducted prior to the alleged onset date [that] reveals . . . a normal cervical spine (Exhibit 1F/46);" (c) a lack of treatment sought for alleged impairments and his "very active activities of daily living;" and (d) his RFC. Tr. 33.

Although the ALJ does not address whether the opinions of Drs. Simpson and DeLuca are well-supported, he did find them specifically inconsistent with other evidence. *See* Tr. 32-33. And on the record before it, the undersigned does not recommend finding the other evidence insubstantial. Consequently, the ALJ did not err in failing to accord controlling weight to the medical opinions of the treating physicians. But even if there is no error in finding those opinions are not entitled to controlling weight, such finding merely clears the first hurdle. Once the ALJ makes that finding, he must make the detailed analysis required by 20 C.F.R. § 404.1527(c) unless there is reliable medical evidence from a treating or examining physician controverting the claimant's treating physician.

Drs. Simpson and DeLuca are the only treating or examining physicians in this case. A State agency medical consultant, Yvonne Post, D.O., opined that Plaintiff's impairments were not severe – an opinion affirmed by another State agency medical consultant on reconsideration. Tr. 66-80. The ALJ, however, gave these opinions "little weight" because the consultants had no opportunity to examine Plaintiff or to consider evidence submitted after the reconsideration on August 15, 2013.[10] Tr. 31. The opinions of the agency consultants provide no basis to bypass the detailed

---

[10]The ALJ initially states that he "gives these opinions little weight," before including his contrary conclusion regarding the severity of Plaintiff's impairments and two reasons for why he gives "little weight" to the opinions. Tr. 31. But the ALJ concludes the discussion with: "Accordingly, the undersigned gives this opinion some weight." *Id.*

analysis required by the regulations. And while opinions of the two treating physicians differ in some respects, *compare* Tr. 276-81 *with* Tr. 317-23, the ALJ did not rely on any differences to controvert any opinion of either doctor or to find either opinion more well-founded than the other. The opinions, moreover, are consistent in significant, material respects, especially in finding a need for Plaintiff to have ready access to a bathroom and a need for frequent, unscheduled breaks. The record before the Court simply does not include any reliable medical evidence that controverts the medical opinions of Drs. Simpson and DeLuca.

Under the facts of this case, the regulations required the ALJ to analyze the opinions of the treating physicians in the detailed manner set out in § 404.1527(c) and addressed in *Newton*. Although the ALJ did not recite the six factors, his decision reflects some consideration of them. He undoubtedly considered factors 1 (examining relationship), 2 (treatment relationship), and 5 (specialization), although he did not characterize Dr. DeLuca as a treating or nontreating physician and primarily limited factor 2 to the treatment relationship post-onset of alleged disability while acknowledging a May 2010 medical record of Dr. Simpson. The ALJ did not directly consider that Dr. Simpson began treating Plaintiff in 2005. While this earlier treatment relationship may be irrelevant to some extent, it is relevant to considering the complete treatment relationship between Plaintiff and Dr. Simpson required by § 404.1527(c). Consequently, the ALJ may not have given full consideration to the second factor. Had he done so, furthermore, it is likely that he would have

---

Regardless, it is clear from the ALJ's decision that he gave no weight to the opinions of the agency consultants. And the Commissioner's argument that the opinions of the consultants show that the opinions of Drs. Simpson and DeLuca were inconsistent with the record as a whole, *see* Doc. 15 at 8-9, simply attempts to manufacture a rationale not relied upon by the ALJ. Such *post hoc* rationalizations provide no basis to reject medical opinions of a treating physician. *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Snodgrass v. Colvin*, No. 11-CV-0219-P, 2013 WL 4223640, at *6 (N.D. Tex. Aug. 13, 2013) (relying on *Newton*).

specifically stated whether he considered Dr. DeLuca as a treating physician.

And with respect to factors three (support for opinions in the medical record) and four (consistency of the opinions with the record as a whole), the ALJ points out perceived inconsistencies between the treating physicians' opinions and other evidence of record. But he makes no effort to consider consistencies or inconsistencies between the opinions of the two treating physicians. An ALJ does not consider the consistency of medical opinions with the record as a whole when he rejects medical opinions of two treating physicians without considering the extent that the opinions are consistent. In this case, the opinions of the treating physicians are essentially the only relevant medical opinions of record. And importantly, the ALJ's decision does not reflect that he considered support for those opinions in the medical evidence of record. It thus appears that the ALJ procedurally erred by not more fully considering and weighing the opinions of Drs. Simpson and DeLuca.

The Commissioner argues that Plaintiff's daily activities undermine the opinions of the treating physicians. *See* Doc. 15 at 9-10. Although a claimant's daily activities are an appropriate consideration "when deciding the claimant's disability status," *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995), the activities listed by the ALJ do not undermine the medical opinions of either Dr. Simpson or Dr. DeLuca. The activities provided Plaintiff with ready access to a bathroom and do not preclude frequent, unscheduled breaks as each physician opined that he would need. *See* Tr. 280-81, 322-23. Reliance on daily activities does not cure the procedural error of the ALJ.

A procedural error does not require reversal and remand, however, unless the error affects the substantial rights of the claimant. *Snodgrass v. Colvin*, No. 11-CV-0219-P, 2013 WL 4223640, at *7 (N.D. Tex. Aug. 13, 2013) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). To warrant reversal, the error must "cast into doubt the existence of substantial evidence to support the

ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). "Remand is required only

when there is a realistic possibility that the ALJ would have reached a different conclusion absent

the procedural error." *Ware v. Colvin*, No. 11-CV-1133-P, 2013 WL 3829472, at \*4 (N.D. Tex. July

24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

On the record before the Court, the failure to conduct the detailed analysis is not harmless

error. Drs. Simpson and DeLuca provided the only relevant medical evidence of Plaintiff's abilities.

Although they both stated that Plaintiff would need ready access to a bathroom and to take frequent,

unscheduled breaks, Tr. 280-81, 322-23, the ALJ discounted their opinions and found that Plaintiff

could perform the full range of sedentary work. While unstated in the ALJ's decision, it appears that

he credited the treating physicians' opinions to the extent they support his RFC assessment. That

appearance, however, emerges only from a vague reference that his "residual functional capacity

assessment is supported by the objective medical evidence contained in the record," Tr. 33, and the

reality that the treating physicians provided the only reliable objective medical evidence contained

in the record. The ALJ provides remarkably little insight into the basis for his RFC assessment.

Regardless of the basis for the ALJ's RFC assessment, it is clear from his decision that he

rejected specific medical opinions of treating physicians that Plaintiff's impairments require him to

have ready access to a bathroom and to frequent, unscheduled breaks. And rejecting medical opin-

ions when there is no contrary opinion from a treating or examining source requires usurping the

physicians' role. *See Newton v. Apfel*, 209 F.3d 448, 453-58 (5th Cir. 2000). "That is neither the

role of the ALJ nor this Court. Neither the courts nor ALJs may rely on their own medical opinions

as to the limitations presented by a claimant's impairments." *Howeth v. Colvin*, No. 12-CV-0979-P,

2014 WL 696471, at \*11 (N.D. Tex. Feb. 24, 2014) (citing *Williams v. Astrue*, 355 F. App'x 828,

832 (5th Cir. 2009) (per curiam decision reversing denial of benefits when the ALJ impermissibly relied on his own medical opinions as to limitations presented by the claimant's impairments). It is reversible error for an ALJ to substitute his own medical opinions for those of a treating physician. *Evans v. Colvin*, No. 1:14-CV-202-BL, 2015 WL 9685552, at *3 (N.D. Tex. Dec. 8, 2015) (recommendation of Mag. J.), *adopted by* 2016 WL 112645 (N.D. Tex. Jan. 8, 2016).

Like *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See* 209 F.3d at 458. And, like *Newton*, this is not "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.* The ALJ did not reject the medical opinions of Drs. Simpson and DeLuca due to any inconsistency with any other medical opinion. Instead, the ALJ appears to have relied on his own medical opinion to find certain limitations unsupported. But that lies outside the role of an ALJ. And to the extent the ALJ perceived a need for an additional or updated medical opinion, he took no steps to secure such opinion from any medical expert. The medical record before the ALJ provides no basis for rejecting the non-exertional limitations noted by Plaintiff's treating physicians.

Appropriate application of the Medical-Vocational Rules or Grids constitutes substantial evidence to support a Step 5 finding of non-disability. *Hoch v. Astrue*, No. 1:11-CV-053-BL, 2012 WL 3240792, at *6 (N.D. Tex. Aug. 9, 2012). But under the facts here, the rejection of the non-exertional limitations calls into question the ALJ's reliance on the Grids to support his Step 5 finding of non-disability. Application of the Grids require "solely exertional" impairments or nonexertional impairments that do not sufficiently affect the claimant's residual functional capacity. *See Loza v.*

20

*Apfel*, 219 F.3d 378, 398 (5th Cir. 2000). And use of the Grids when faced with an impairment involving incontinence may constitute reversible error. *See Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

Further, although the ALJ also elicited testimony from a VE, his hypothetical limited Plaintiff to the full range of sedentary work and contained no non-exertional limitations. *See* Tr. 56. But the opinions of the treating physicians support other limitations. And to constitute substantial evidence to support a Step 5 finding of non-disability, testimony from a VE must include all limitations warranted by the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). Accordingly, to rely on the VE testimony to satisfy the Step 5 burden, the ALJ should have included such limitations in his hypothetical questioning.

The Court should find that the ALJ improperly considered and weighed the opinions of Plaintiff's treating physicians. There is no good cause to discount the weight of those opinions relative to any other expert. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 404.1527. Had he conducted that analysis and properly considered and weighed the opinions of the treating physicians there a realistic possibility that he would have not relied on the Grids and would have included additional limitations in his hypothetical to the VE. Consequently, the procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Plaintiff's substantial rights have been affected by the consideration and weight accorded to the opinions of the treating physicians by the ALJ. This procedural error is not harmless and warrants remand.

Notably, when counsel for Plaintiff added a limitation that would require the hypothetical claimant to "leave the workstation to use the bathroom" occasionally, i.e., up to a third of the day,

21

the VE testified that such individual would be unable to do Plaintiff's past work or the jobs the VE

had identified in response to the initial hypothetical. Tr. 63. In addition, if the need to use the

bathroom caused the individual to be off task for only fifteen percent of the work day, the VE's

answer would remain the same. *See id.* This additional questioning shows how altering the limita-

tions caused by Plaintiff's impairments also alters the testimony of the VE and ultimately whether

the Commissioner carries her burden at Step 5.

But the additional testimony is insufficient of itself to justify a reversal and remand for an

award of benefits. First, the ALJ should be given an opportunity to properly consider the medical

opinions of the treating physicians on remand before formulating hypothetical questions to present

to the VE. Second, the VE did not testify that the additional limitations would preclude all

employment. Although the VE testified that an individual that missed three or more days of work

each month would be unemployable, Tr. 63, and Dr. DeLuca opined that Plaintiff would miss more

than three days of work each month, Tr. 323, Dr. Simpson expressed no opinion regarding potential

absences due to Plaintiff's impairments, *see* Tr. 280 (leaving that question unanswered). And when

asked about a hypothetical individual who required unscheduled breaks at unpredictable intervals

four times a day for up to fifteen minutes in addition to regular breaks and lunches, the VE testified

that such "person wouldn't generally be able to perform" Plaintiff's "past relevant work or other

jobs." Tr. 64. But it is not clear whether "other jobs" in this context means all other jobs or the

other jobs that the VE had identified that Plaintiff could do. And the testimony is further cloaked

with uncertainty due to the use of "generally" in the answer. If warranted on remand, the ALJ should

have the opportunity to obtain testimony from a VE about other potential jobs that someone with

Plaintiff's impairments and limitations can perform.

For all of these reasons, it is recommended that the Court find that ALJ improperly considered medical opinions of Plaintiff's treating physicians and reverse and remand the decision of the Commissioner for further consideration on that issue.

## C.  Credibility Determination

Plaintiff next argues that the ALJ improperly evaluated his credibility.  Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 30.  The ALJ first found that Plaintiff's ability to participate in various listed activities of daily living "diminishes the credibility of the claimant's allegations of functional limitations." Tr. 31.  But as already discussed in the previous section, no listed activity is inconsistent with disability or a need for ready access to a bathroom or frequent breaks.

The ALJ next found Plaintiff's limited treatment inconsistent with the alleged severity of his impairments and functional limitations thus diminishing the credibility of such allegations. *Id.* Similarly, the ALJ found that Plaintiff's failure to return to Dr. Simpson for a follow-up visit "suggests that his symptoms may not have been as serious as has been alleged." *Id.* But the ALJ did not consider Plaintiff's stated inability to afford treatment and did not explore whether Plaintiff's financial condition justified his failures to follow prescribed treatment or to seek treatment. Plaintiff testified that he had not been to see his doctors due to finances and that he had stretched medication two to three times longer than prescribed because of funds. *See* Tr. 44.  Medical records also note that Plaintiff "cannot afford the hospital" and was not interested in various medical options "due to financial status." Tr. 305, 339.  Case law has long recognized that poverty may affect the ability of

a claimant to remedy his or her condition. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Social Security Ruling ("SSR") 82-59, furthermore, has recognized since 1982 that an inability to

afford available treatment may justify a failure to follow prescribed treatment. *See* Titles II and XVI:

Failure to Follow Prescribed Treatment, SSR 82–59 (PPS–78), 1982 WL 31384, at *5 (S.S.A. Jan.

1, 1982). Moreover,

> the adjudicator must not draw any inferences about an individual's symptoms and
> their functional effects from a failure to seek or pursue regular medical treatment
> without first considering any explanations that the individual may provide, or other
> information in the case record, that may explain infrequent or irregular medical visits
> or failure to seek medical treatment.

Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims:

Assessing the Credibility of an Individual's Statements, SSR 96-7P, 1996 WL 374186, at *7 (S.S.A.

July 2, 1996).[11]   And SSR 96-7P specifically notes that an "individual may be unable to afford

treatment and may not have access to free or low-cost medical services." *Id.* at *8. Under SSR 96-

7p, the ALJ should have considered Plaintiff's stated explanation for not pursuing regular medical

treatment. The failure to do so detracts from the ALJ's credibility finding.

Courts accord "great deference" to an ALJ's credibility assessment when substantial evidence

supports it. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *accord Villa v. Sullivan*, 895 F.2d

1019, 1024 (5th Cir. 1990). While given circumstances may require ALJs to state specifically their

reasons for finding subjective complaints not credible, they are not required to follow any formalistic

rule or language. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). Nevertheless, under

the facts of this case, the ALJ's questionable reasons given for finding Plaintiff only partially

---

[11]Effective March 16, 2016, SSR 96-7p was superseded by Titles II and XVI: Evaluation of Symptoms in
Disability Claims, SSR 16–3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). But SSR 96-7p was in effect when the
ALJ issued his decision.

credible may provide a legitimate basis for not deferring to the that credibility assessment. The ALJ

identified some of the same questionable reasons for discounting the opinions of Plaintiff's treating

physicians. *See* Tr. 32-33. And in this case, it also appears that the ALJ's failure to properly consid-

er the opinions of Plaintiff's treating physicians significantly affected the credibility determination.

*See* Tr. 31-33. On the facts of this case, the Court should not find substantial evidence to support

the ALJ's credibility finding given the noted weaknesses of that finding and the failure to properly

consider the opinions of Drs. Simpson and DeLuca. Accordingly, it is recommended that the Court

direct the ALJ to re-assess Plaintiff's credibility on remand, unless the Commissioner instead applies

SSR 16-3p, which became effective on March 16, 2016.

## V.  CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that (1)

the ALJ improperly considered the opinions of Plaintiff's treating physicians and (2) the ALJ's

credibility finding is not supported by substantial evidence. The undersigned thus **RECOMMENDS**

that the district court **REVERSE** Commissioner's decision to deny benefits and **REMAND** this case

for further administrative proceedings. On remand the Commissioner shall properly consider the

opinions of Drs. Simpson and DeLuca and, unless unwarranted in light of SSR 16-3p, reassess

Plaintiff's credibility.

Because the parties have not consented to proceed before a United States Magistrate Judge,

the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R.

Cummings in accordance with Second Amended Special Order No. 3-301 (doc. 17).

A copy of this Report and Recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place

in the magistrate judge's report and recommendation where the disputed determination is found.  An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge

is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing

the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996).

   **SO ORDERED this 27 day of May, 2016.**


   **E. SCOTT FROST**
   **UNITED STATES MAGISTRATE JUDGE**

26